1  WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Travis Wade Amaral, | No. CV-16-00594-PHX-JAT (BSB) |
| Petitioner, | **ORDER** |
| v. | |
| Charles L Ryan, et al., | |
| Respondents. | |

Pending before this Court is the Report and Recommendation of the Magistrate Judge (R&R). This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The R&R recommends that this Court: 1) find Petitioner's *Miller* claim exhausted before the state courts; and 2) find Petitioner did not waive his right to seek federal habeas relief via his plea agreement. (Doc. 43). If the Court adopts the R&R, the state will file a supplement to its answer to address the merits of Petitioner's *Miller* claim. (*Id.* at 1).

Respondents filed an objection to the R&R. (Doc. 44). Petitioner filed a reply to Respondents' objection. (Doc. 45). The Court will review the portions of the R&R to which there is a specific objection de novo. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*) (It is "clear that the district judge must review the magistrate judge's findings and recommendations *de novo if objection is made*, but not otherwise.")

## I. Factual and Procedural Background

The R&R summarized the factual and procedural background of this case. (Doc. 43 at 1-4). Neither party objected to the accuracy of this summary. Accordingly, the Court accepts and adopts it.

In short summary, Petitioner is incarcerated for crime he committed when he was sixteen years old. (Doc. 43 at 2). Petitioner's sentence required him to serve 57.5 years in prison, with the possibility of parole thereafter. (Doc. 43 at 2-3).

Following the Supreme Court's decision in *Miller v. Alabama*, 567 U.S. 460 (2012), Petition filed a post-conviction relief petition in state court. In *Miller*, the Supreme Court held that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Miller*, 567 U.S. at 479. This holding has two components for juveniles: 1) that the sentence be "mandatory" and 2) that the sentence "life without the possibility of parole." Petitioner argues that his 57.5 year sentence is effectively a life without parole sentence.

## II. Respondents' Procedural Arguments

### A. *Montgomery*

Following its decision in *Miller*, the Supreme Court held in *Montgomery v. Louisiana,* ___ U.S. ___, 136 S.Ct. 718 (2016), that claims under *Miller* applied retroactively to cases on collateral review. *Montgomery*, 136 S. Ct. at 736-37.

In this case, when Petitioner first filed his second post-conviction relief petition in state court, *Montgomery* had not yet been decided. It is undisputed that Petitioner's case was not on direct appeal when *Miller* was decided and, thus, Petitioner would need the benefit of retroactivity to have his *Miller* claim heard by the courts.

At this point, everyone seems to be in agreement that *Montgomery* did not create a new claim.[1] However, Respondents argue that a *Montgomery* claim must nonetheless be exhausted in state court. (Doc. 44 at 5). As all parties concede, Petitioner did present a

---

[1] (Doc. 43 at 6 n.1); (Doc. 33 at 10); *State v. Valencia*, 386 P.3d 392, 395, ¶ 14 (Ariz. 2016); *Tatum v. Arizona*, ___U.S. ___ 137 S.Ct. 11, 12 (2016); (Doc. 45 at 2).

*Miller* claim to the state courts via his second post-conviction relief petition. Further, the Arizona Courts presumed without deciding that *Miller* would be applicable to cases on collateral review; and therefore, the Arizona Courts proceeded to the merits of Petitioner's *Miller* claim even though *Montgomery* had not yet been decided. (*See* Arizona Court of Appeal Opinion on Petitioner's second post-conviction relieve petition: Doc. 33-4 at 36 n.1). Thus, as the R&R concludes, the *Miller* claim was exhausted in the state courts.

### 1. "Mandatory"

The actual issue Respondents are arguing is that *Montgomery's* "clarification" of *Miller* so materially modified the holding of *Miller* that any claim that was exhausted as a pure *Miller* claim, without the *Montgomery* clarification, was effectively not presented to the state courts because the claim was presented under the wrong legal test. Respondents' support for the argument that *Montgomery* so materially changed *Miller* is that when the Arizona state courts applied *Miller* as written, they were summarily reversed for further consideration in light of *Montgomery*. *See Tatum v. Arizona*, ___U.S. ___ 137 S. Ct. 11, 12-13 (2016). Further, applying *Tatum*, the Arizona Supreme Court in *Valencia* noted that the holding of *Miller* was significantly clarified by *Montgomery*. Specifically, the Arizona Supreme Court stated:

> The State contends that *Miller* bars mandatory sentences of life without parole and thus requires only that the sentencing court consider the juvenile's age as a mitigating factor before imposing a natural life sentence - as occurred in each case here. *Montgomery* refutes these arguments by expressly holding that *Miller* reflects a substantive rule and noting "[e]ven if a court considers a child's age before sentencing him or her to a lifetime in prison, that sentence still violates the Eighth Amendment for a child whose crime reflects unfortunate yet transient immaturity." *Id.* at 734 (internal quotation marks omitted); *see also Tatum v. Arizona*, 137 S. Ct. 11, 12 (2016) (summarily granting review, vacating, and remanding for reconsideration, in light of *Montgomery*, several decisions by the Arizona Court of Appeals rejecting claims for post-conviction relief under *Miller* where sentencing court had considered the petitioner's youth).

*Valencia*, 386 P.3d at 395, ¶ 16.

Thus, in restating the State's argument, the Arizona Supreme Court summarized that while *Miller* seemingly allowed life sentences without the possibility of parole for

juveniles to pass constitutional scrutiny without resentencing if the original sentencing court considered the juvenile's age as a mitigating factor,[2] (and the Arizona Supreme Court noted that in Valencia's sentencing, Valencia's age was considered as a mitigating factor (*Valencia*¸ 386 P.3d at 394, ¶¶ 5-6)) *Montgomery* "clarified" *Miller* as holding that resentencing would be required (even when the sentencing court considered the juvenile's age as a mitigating factor) to consider the specific test of *Montgomery*; namely: whether the juvenile's crimes, "reflected 'irreparable corruption' rather than the 'transient immaturity of youth.'" *Valencia*, 386 P.3d at 395, ¶ 15. Thus, the Arizona Supreme Court remanded Valencia's case to the trial court for an evidentiary hearing wherein Valencia would be given the, "opportunity to establish, by a preponderance of the evidence, that [his] crimes did not reflect irreparable corruption but instead transient immaturity. [citation omitted]. Only if [he] meet[s] this burden will [he] establish that [his] natural life sentence[] [is] unconstitutional, thus entitling [him] to resentencing." *Valencia*, 386 P.3d at 396, ¶ 18.

Turning to Petitioner's case, in Petitioner's second post-conviction relief petition, the Arizona Court of Appeals reached the merits of Petitioner's *Miller* claim. In deciding that Petitioner was not entitled to relief under *Miller*, the Arizona Court of Appeals found four reasons why Petitioner did not meet the test of *Miller*. (Doc. 33-4 at 3-4, ¶ 7). Specifically, the Arizona Court of Appeals found that Petitioner was not entitled to relief because: 1) Petitioner was not sentenced to life without parole because he was entitled to a parole hearing after serving 25 years on each life count; 2) Petitioner's sentences were 57.5 years only because they were consecutive, but the fact that Petitioner committed multiple crimes that resulted in consecutive sentences does not make each sentence the functional equivalent of a life sentence without parole; 3) the trial judge imposing

---

[2] In other words, *Miller* said "mandatory" life sentences without parole for juveniles were unconstitutional; thus, the state of Arizona argued and several Arizona courts originally held that if the sentencing court expressly considered the juvenile's age as a mitigating factor, and the sentencing court retained the discretion to not give a life sentence, the sentence would not run afoul of *Miller*'s prohibition on "mandatory" life sentences for juveniles without the possibility of parole. However, in *Tatum* the United States Supreme Court reversed that this reading of *Miller* in light of *Montgomery*.

consecutive sentences was discretionary not mandatory; and 4) the trial judge considered significant evidence regarding Petitioner's age as a mitigating factor, as *Miller* required[3]. (*Id.*).

The test for whether this Court can grant habeas relief under 28 U.S.C. § 2254 on exhausted claims is whether the decision of the state court was contrary to or an unreasonable application of clearly establish federal law, or an unreasonable determination of the facts. *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003). In this case, it would appear that the third and fourth reasons given by the Arizona Court of Appeals for denying Petitioner's *Miller* claim would not have been contrary to federal law at the time the decision was issued, but in light of *Montgomery, Tatum,* and *Valencia* would now be contrary to clearly established federal law.

Presumably recognizing this likely outcome, Respondents have strongly argued that a *Miller* claim must be "re-exhausted" under *Montgomery*, not as a new claim, but under a completely different legal test. Doc. 44 at 4-5.[4] Citing *Picard v. Connor*, 404 U.S. 270, 276 (1971), Respondents note that even a claim that has previously been presented to the state courts may still be unexhausted if there has been an intervening change in the law that casts "…the legal issue in a fundamentally different light…." Doc. 44 at 5. Here, the fundamentally different light would be that the "test" for a *Miller* claim is not whether the sentence was "mandatory", and not whether the original sentencing court considered the juvenile's age in imposing a sentence, but rather, whether Petitioner's crimes were just "transient immaturity". *Montgomery*, 136 S.Ct. at 734. Thus, *Montgomery* requires the sentencing court to expressly consider and find

---

[3] Specifically, *Miller* held that there was no categorical bar on life without parole sentences for juveniles. *Miller*, 567 U.S. at 479. However, *Miller* held that for a life without parole sentence for a juvenile to be constitutional, the sentencing court had to have the ability to consider "an offender's age and the wealth of characteristics and circumstances attendant to it" and the ability to exercise discretion regarding whether to give the juvenile a life without parole sentence. *Miller*, 567 U.S. at 476.

[4] Presumably this issue would not present itself for cases decided by the state court after *Montgomery/Tatum/Valencia* because those cases would have considered a *Miller* claim under the correct legal standard.

"irreparable corruption" for the juvenile life without parole sentence to be proportional. *Id.*

In reply, Petitioner argues that because everyone agrees *Montgomery* did not create a new claim, and because Respondents agree that Petitioner exhausted a *Miller* claim, there is nothing further to return to state court and exhausted regarding this *Miller* claim. (Doc. 45 at 2). Further, Petitioner argues that to the extent Respondents rely on *Valencia* as a "clarification" of *Miller* such reliance is misplaced because a state court cannot make federal law. (*Id.* at 6).

Turning to Petitioner's first argument why re-exhaustion is not required, the Court disagrees that a *Miller* claim has been exhausted in state court under the correct legal test. In sum, Petitioner argues that *Montgomery* did nothing more that make *Miller* retroactive; thus, there is nothing "new" about *Montgomery* to exhaust. This argument was made by the dissent in *Tatum*, but rejected by the majority. *Tatum*, 137 S.Ct. at 11-13. Specifically, the dissent said that the Arizona sentencing scheme complied with *Miller* and that if *Montgomery* solely made *Miller* retroactive, there was nothing in *Montgomery* that would require remand. *Id* at 13-14. However, the majority in *Tatum* made clear that they viewed the "mandatory" definition of *Montgomery* to be more than the sentencing court lacking discretion; which was seemingly the definition used by *Miller*. *Id* at 11-13. Instead the majority remanded and required an express finding by the sentencing court that the juvenile was irreparably corrupted and not transiently immature for the sentence to be constitutionally proportional. *Id* at 12. Thus, while Petitioner's argument here is fully in accord with what the result would be if *Montgomery* were a mere holding that *Miller* was retroactive, the majority in *Tatum* holds that *Montgomery* also changed the definition of "mandatory."

The distinction between *Miller* and *Montgomery* is highlighted in this case by a review of Petitioner's second post- conviction relief petition filed in accordance with only *Miller*. Petitioner did not argue in state court that his sentencing violated the constitution because he did not have an evidentiary hearing to determine the specific issue of whether

his crimes were merely "transient immaturity" and not "irreparable corruption." Of course, Petitioner cannot be faulted for this because, as noted above, each sentencing court being required to consider not only "an offender's age and the wealth of characteristics and circumstances attendant to it," as *Miller* required, but specifically the question of "transient immaturity" versus "irreparable corruption" did not arise until *Montgomery*. And in Petitioner's case, this "clarification" likely changes the outcome.

Specifically, the original sentencing court took testimony from Petitioner's parents and a clinical physiologist, and considered multiple mental evaluations of Petitioner, all of which addressed Petitioner's age. (Doc. 33-4 at 37). Further the sentencing court expressly considered Petitioner's age and found it to be a mitigating factor. (*Id*.) However, neither the evidence received at sentencing, nor the sentencing judge, addressed the concept of "transient immaturity" specifically; and the sentencing judge did not expressly find "irreparable corruption." Thus, while Petitioner's original sentencing may have satisfied *Miller*, it does not appear to have satisfied the *Montgomery* "clarification."

Regarding Petitioner's next argument, that *Valencia* cannot define federal law, Petitioner is correct. However, the Arizona Courts were summarily reversed by a federal court in *Tatum* for applying *Miller* without the *Montgomery* "clarification." Further, as noted above, the Arizona Courts were reversed for reconsideration of their *Miller* decisions in light of *Montgomery*. *Tatum*, 137 S.Ct. at 11-14 (noting that the Arizona courts had assumed *Miller* was retroactive and had considered the merits of the *Miller* claim, but nonetheless remanding to apply *Montgomery*). Thus, while the *Valencia* Court may not be a binding test of what *Montgomery* requires, clearly the United States Supreme Court in *Tatum* found *Montgomery* required something more than the sentencing court having the discretion to consider "an offender's age and the wealth of characteristics and circumstances attendant to it." Thus, this Court cannot say that *Valencia*'s interpretation of what *Montgomery* requires was contrary to or an unreasonable application of federal law.

Based on all of the foregoing, the Court concludes that *Montgomery* created a materially new "test" for the definition of "mandatory." Thus, to the extent what Petitioner exhausted was a *Miller* claim using the definition of mandatory as meaning: the sentencing court had the discretion to consider "an offender's age and the wealth of characteristics and circumstances attendant to it;" under *Montgomery* Petitioner will have to re-exhaust this claim using the definition of "mandatory" as meaning: Petitioner was given the opportunity to produce evidence that his crimes were just "transient immaturity."[5]

### 2. "Life Sentence without Parole"

As indicated above, *Miller* had two relevant holdings for juvenile cases: 1) that the sentence was mandatory; and 2) that the juvenile received a life sentence without the possibility of parole. As further discussed above, the Arizona Court of Appeals first two reasons for finding that Petitioner was not entitled to relief under *Miller* were that Petitioner did not receive a life sentence without the possibility of parole. (Doc. 33-4 at 36). Specifically, the Arizona Court of Appeals stated:

> First Amaral was not sentenced to life without parole; both life sentences provided for the possibility of parole after twenty-five years. Second although the consecutive nature of the three sentences requires that Amaral serve a minimum of 57.5 years, the length of the consecutive sentences does not make them the functional equivalent of a life sentence without parole.

(Doc. 33-4 at 36).

As also indicated above, Petitioner argues that his 57.5 year sentence before he receives consideration for parole is the functional equivalent of a life sentence. By this Court's calculation, Petitioner would be entitled to consideration for parole at the age of 73.

The component of a *Miller* claim that the juvenile receive a "life sentence without

---

[5] The Court notes that a petition for certiorari is pending in *Valencia*. If that is granted, and if the Supreme Court defines "mandatory" under *Montgomery* differently than the Arizona Supreme Court, obviously this Court's holding that the sentencing court considering "transient immaturity" is the operative test for determining whether a sentence was "mandatory" would give way to any further clarification.

- 8 -

the possibility of parole" has been exhausted with the state courts. Thus, the amended Petition is a mixed petition that contains both exhausted claims and unexhausted claims.

### B. Plea Agreement

The R&R concludes that Petitioner did not waive his right to file a federal habeas petition in his plea agreement in state court. Petitioner and Respondent both agree with this conclusion. However, Respondents argue that Petitioner's plea agreement did waive the particular sentencing claim that is at issue in this case.

The R&R and the parties agree that for a waiver to be enforceable it must be express. The plea agreement stated, "…the defendant also gives up any and all motions, defenses, objections or requests which he has made or raised, or could assert hereafter, to the court's entry of judgment against him and imposition of sentence upon him consistent with this agreement." (Doc. 12-1 at 4). Respondents argue that this language waives all claims challenging Petitioner's sentence other than claims of ineffective assistance of counsel or claims that the plea was not knowingly and voluntarily entered, neither of which are at issue in this case. (Doc. 44 at 7).

The exact same waiver as is found in Petitioner's plea agreement has been enforced by other courts in this district to bar challenges to sentencing claims, while allowing the habeas petition to proceed. *See e.g. Schenck v. Ryan,* No. CIV 13-0776-PHX-GMS (MHB), 2013 WL 6628140, *1-5 (D. Ariz. Dec. 17, 2013), adopted by 2014 WL 119373 (Jan. 14, 2014). However, the Arizona Court of Appeals has noted: No Arizona decision has addressed whether a defendant waives his right to object to the proportionality of his sentence by entering a guilty plea. *Gonzalez-Barrera v. Ryan*, No. CV-15-8024-PCT-JJT (JFM), 2016 WL 4611576, at *8 (D. Ariz. Feb. 19, 2016), adopted by 2016 WL 4592179 (Sept. 2, 2016) (quotation marks and citation omitted). Clearly *Miller/Montgomery* claims are constitutional challenges to the proportionality of a juvenile's sentence.

Applying Ninth Circuit law, albeit in a different context, another district court noted that:

> An appeal waiver will not apply, however, if:
>> 1) a defendant's guilty plea failed to comply with Fed. R. Crim. P. 11; 2) the sentencing judge informs a defendant that she retains the right to appeal; 3) the sentence does not comport with the terms of the plea agreement; or 4) the sentence violates the law.
>
> *United States v. Bibler*, 495 F.3d 621, 624 (9th Cir. 2007). "A sentence is illegal if it exceeds the permissible statutory penalty for the crime or violates the Constitution." *Id.* (quoting *United States v. Fowler*, 794 F.2d 1446, 1449 (9th Cir. 1986)). Here, Defendant is raising a constitutional argument.

*United States v. Tomisser*, 196 F.Supp.3rd 1169, 1174-75 (E.D. Wash. 2016).

In this case, Respondents presumably will argue that Petitioner's sentence was not illegal/unconstitutional under *Miller*. However, clearly Petitioner is raising a constitutional challenge to the proportionality of his sentence under *Miller*. Even though this Court is not holding at this time that Petitioner's sentence is unconstitutional, if Petitioner prevailed on his argument, the effect would be that his sentence is unconstitutional. Therefore, because Petitioner is bringing a challenge to the constitutionality of his sentence, the Court will not apply the waiver in Petitioner's plea agreement.

### III. Conclusion

Based on the foregoing,

**IT IS ORDERED** that the Report and Recommendation (Doc. 43) is accepted in part, rejected in part, and modified in part. Specifically, the R&R is accepted that Petitioner has exhausted his *Miller* claim on the issue of whether he received a life sentence without parole; the R&R is rejected on whether Petitioner has exhausted a *Miller/Montgomery* claim on whether Petitioner's sentence was "mandatory;" and the R&R is modified and the conclusion is accepted as to whether Petitioner waived his right to bring his *Miller/Montgomery* claim in his plea agreement. The objections are sustained or overruled consistent with this Order.

/ / /

/ / /

/ / /

**IT FURTHER ORDERED** that the mixed petition in this case is re-referred to Magistrate Judge Bridget S. Bade pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for further proceedings and a report and recommendation.

Dated this 2nd day of October, 2017.

James A. Teilborg
Senior United States District Judge