**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Travis Wade Amaral,<br><br>                Petitioner,<br><br>v.<br><br>Charles L Ryan, et al.,<br><br>                Respondents. | No. CV-16-00594-PHX-JAT (BSB)<br><br>**REPORT AND RECOMMENDATION** |

On July 11, 2016, Petitioner Travis Wade Amaral filed an Amended Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254. (Doc. 12.) Respondents filed a limited answer to the amended petition, and Petitioner filed a reply. (Docs. 33, 39.) On August 25, 2017, the assigned magistrate judge issued a report and recommendation on the amended petition. (Doc. 43.) The Honorable James A. Teilborg accepted in part, rejected in part, and modified in part, the report and recommendation. (Doc. 47.) The parties filed motions for reconsideration of that ruling. (Docs. 48, 58.) On December 19, 2017, Judge Teilborg granted in part and denied in part the motions for reconsideration, and referred the amended petition back to the assigned magistrate judge for a report and recommendation "on the merits of this case." (Doc. 60.) The assigned magistrate judge ordered further briefing, which the parties have filed. (Docs. 61, 67, 68.)

The amended petition asserts that Petitioner's sentences imposed in state court violate the Eighth Amendment's prohibition on cruel and unusual punishment under Supreme Court precedent, including *Miller v. Alabama*, 567 U.S. 460 (2012), and

*Montgomery v. Louisiana*, ___ U.S. ___, 136 S. Ct. 718 (2016). (Doc. 12.) Respondents argue that Court should deny relief because the *Montgomery* aspect of Petitioner's claim may be unexhausted and, alternatively, even if the *Miller* and *Montgomery* aspects of Petitioner's claim are properly before this Court on habeas corpus review, Petitioner's claim lacks merit. (Doc. 67 at 5.) As discussed below, the Court recommends that the amended petition be denied.

I.   **Factual and Procedural Background**

　　A.   **Charges, Conviction and Sentencing**

On August 6, 1992, Petitioner was indicted in the Maricopa County Superior Court on two counts of first-degree murder (Counts One and Two), one count of conspiracy to commit first-degree murder (Count Three), one count of conspiracy to commit armed robbery (Count Four), and two counts of armed robbery (Counts Five and Six).[1] (Doc. 33, Exs. A, B.) Petitioner was sixteen-years old when he committed the alleged offenses. (Doc. 12 at 4.) Pursuant to a plea agreement, on February 3, 1993, Petitioner pleaded guilty to two counts of first-degree murder (Counts One and Two), and one count of attempted armed robbery (a lesser-included offense of Count Five). (Doc. 33, Ex. E at 1; Ex. F at 15.) After holding an aggravation/mitigation hearing, on March 5, 1993, the trial court sentenced Petitioner to life imprisonment, without the possibility of parole until Petitioner had served twenty-five years, for each of the two first-degree murder convictions, and seven-and-one-half years' imprisonment for the attempted armed robbery conviction. (Doc. 33, Ex. H at 1-2.) The trial court ordered the three sentences to run consecutively. (*Id.*) The consecutive nature of the three sentences requires that Petitioner serve a minimum of 57.5 years' imprisonment. (Doc. 12 at 2.)

/ / /

/ / /

　　B.   **Post-Conviction Review**

---

[1] To provide context for Petitioner's claims, the Court incorporates the relevant factual and procedural background from the August 25, 2017 report and recommendation. (Doc. 43.) The district court previously adopted that portion of the report and recommendation. (Doc. 47 at 2.)

### 1. First Post-Conviction Proceeding

In April 1993, Petitioner filed a notice of post-conviction relief in the trial court pursuant to Rule 32. (Doc. 33, Ex. A.) The trial court denied relief and Petitioner appealed. (Doc. 33, Ex. K.) In 1996, the Arizona Court of Appeals denied review. (*Id*.)

### 2. Second Post-Conviction Proceeding

On July 13, 2010, Petitioner filed a second notice of post-conviction relief. (Doc. 33, Ex. L.) With the assistance of counsel, Petitioner filed a petition raising the following claims: (1) Petitioner's sentences violated *Miller*, which held "that mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments'"; and (2) new scientific studies about brain development constituted "newly discovered material evidence" entitling Petitioner to relief under Ariz. R. Crim. P. 31.1(e). (Doc. 33, Ex. M.) On June 18, 2013, the trial court summarily denied relief. (Doc. 33, Ex. N.)

Petitioner filed a petition for review in the Arizona Court of Appeals raising the same claims. (Doc. 33, Exs. P, Q, T.) On February 12, 2015, the Arizona Court of Appeals granted review, but denied relief. (Doc. 33, Ex. U.) Petitioner petitioned for review in the Arizona Supreme Court. (Doc. 33, Ex. V.) On September 1, 2015, the Arizona Supreme Court denied review of Petitioner's claim based on *Miller*, but granted review on Petitioner's state law claim under Rule 31.1(e)). (Doc. 33, Ex. X.) On February 29, 2016, the Arizona Supreme Court rejected Petitioner's arguments regarding that claim and affirmed the judgment. (Doc. 33, Ex. BB.) Petitioner filed a petition for writ of certiorari in the United States Supreme Court, which the Court denied on October 3, 2016. (Doc. 33, Ex. CC.)

### C. Petition for Writ of Habeas Corpus

On March 3, 2016, Petitioner filed a timely petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court. (Doc. 1; *see* Doc. 33 at 6 n.2.) With the assistance of court-appointed counsel, Petitioner filed an amended petition. (Doc. 12.) The amended petition asserts that Petitioner's consecutive sentences violate the Eighth

Amendment's prohibition on cruel and unusual punishment under Supreme Court precedent, including *Miller* and *Montgomery*. (Doc. 12.) Petitioner argues that his consecutive sentences, which require him to serve a minimum of 57.5 years' imprisonment, are the functional equivalent of life without the possibility of parole. (*Id.* at 12, 17.)

## II.   Exhaustion and Procedural Bar

Ordinarily, a federal court may not grant a petition for writ of habeas corpus unless the petitioner has exhausted available state remedies. 28 U.S.C. § 2254(b). To exhaust state remedies, a petitioner must afford the state courts the opportunity to rule upon the merits of his federal claims by "fairly presenting" them to the state's "highest" court in a procedurally appropriate manner.[2] *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim"); *Castille v. Peoples*, 489 U.S. 346, 349 (1989) (same).

A claim has been fairly presented if the petitioner has described both the operative facts and the federal legal theory on which his claim is based. *See Baldwin*, 541 U.S. at 33. A "state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or brief . . . that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Id.* at 31-32. Thus, "a petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum . . . (2) through the proper vehicle, . . . and (3) by providing the proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (internal citations omitted).

The requirement that a petitioner exhaust available state court remedies promotes comity by ensuring that the state courts have the first opportunity to address alleged

---

[2] In Arizona, unless a prisoner has been sentenced to death, the "highest court" requirement is satisfied if the petitioner has presented his federal claim to the Arizona Court of Appeals either through the direct appeal process or post-conviction proceedings. *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005).

- 4 -

1 violations of a state prisoner's federal rights. *See Duncan v. Walker*, 533 U.S. 167, 178 (2001); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). Principles of comity also require federal courts to respect state procedural bars to review of a habeas petitioner's claims. *See Coleman*, 501 at 731-32. Pursuant to these principles, a habeas petitioner's claims may be precluded from federal review in two situations.

First, a claim may be procedurally defaulted and barred from federal habeas corpus review when a petitioner failed to present his federal claims to the state court, but returning to state court would be "futile" because the state court's procedural rules, such as waiver or preclusion, would bar consideration of the previously unraised claims. *See Teague v. Lane*, 489 U.S. 288, 297-99 (1989); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002). If no state remedies are currently available, a claim is technically exhausted, but procedurally defaulted. *Coleman*, 501 U.S. at 732, 735 n.1.

Second, a claim may be procedurally barred when a petitioner raised a claim in state court, but the state court found the claim barred on state procedural grounds. *See Beard v. Kindler*, 558 U.S. 53 (2009). "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claim has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman*, 501 U.S. at 731-32. In this situation, federal habeas corpus review is precluded if the state court opinion relies "on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed*, 489 U.S. 255, 260 (1989).

A state procedural ruling is "independent" if the application of the bar does not depend on an antecedent ruling on the merits of the federal claim. *See Stewart v. Smith*, 536 U.S. 856, 860 (2002); *Ake v. Oklahoma*, 470 U.S. 68, 74-75 (1985). A state court's application of the procedural bar is "adequate" if it is "strictly or regularly followed." *See Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994). If the state court occasionally excuses non-compliance with a procedural rule, that does not render its procedural bar inadequate. *See Dugger v. Adams*, 489 U.S. 401, 410-12 n.6 (1989). "The independent

and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." *Coleman*, 501 U.S. at 732. Although a procedurally barred claim has been exhausted, as a matter of comity, the federal court will decline to consider the merits of that claim. *See id*. at 729-32.

However, because the doctrine of procedural default is based on comity, not jurisdiction, federal courts retain the power to consider the merits of procedurally defaulted claims. *See Reed v. Ross*, 468 U.S. 1, 9 (1984). Generally, a federal court will not review the merits of a procedurally defaulted claim unless a petitioner demonstrates "cause" for the failure to properly exhaust the claim in state court and "prejudice" from the alleged constitutional violation, or shows that a "fundamental miscarriage of justice" would result if the claim were not heard on the merits. *Coleman*, 501 U.S. at 750. Additionally, pursuant to 28 U.S.C. § 2254(b)(2), the court may dismiss plainly meritless claims regardless of whether the claim was properly exhausted in state court. *See Rhines v. Weber*, 544 U.S. 269, 277 (2005) (holding that a stay is inappropriate in federal court to allow claims to be raised in state court if they are subject to dismissal under § 2254(b)(2) as "plainly meritless").

**A.    Exhaustion of Petitioner's *Miller/Montgomery* Claim**

To provide context for the exhaustion analysis, the Court briefly discusses the relevant Supreme Court precedent. In *Miller*, the Supreme Court held that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Miller,* 567 U.S. at 479. In *Miller,* the Court did not prohibit the imposition of life without parole, but required that when imposing such a sentence the court must consider the defendant's age and age-related characteristics. *Id*. at 479-80. In *Montgomery*, the Court held that *Miller* applies retroactively to cases on collateral review. *Montgomery,* 136 S. Ct. 718.

In determining whether *Miller* announced a new substantive rule that should apply retroactively under *Teague v. Lane*, 489 U.S. 288 (1989), the Court in *Montgomery* referred to language from its decision in *Miller* stating that a sentence of life without

parole should be reserved for "all but the rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility." *Montgomery*, 136 S. Ct. at 734 (citing *Miller*, 132 S. Ct. at 2469). In *Montgomery,* the Court interchangeably used concepts of "irretrievable depravity," "permanent incorrigibility," and "irreparable corruption," in its discussion of the retroactivity of *Miller*. *See Montgomery*, 136 S. Ct at 733-34. The Court concluded that *Miller* "did not require trial courts to make a finding of fact regarding a child's incorrigibility." *Id.* at 735.

The Court noted that "[w]hen a new substantive rule of constitutional law is established, [the] Court is careful to limit the scope of any attendant procedural requirement to avoid intruding more than necessary upon the States' sovereign administration of their criminal justice systems." *Id.* The Court explained that "[t]he procedure *Miller* prescribes" is "[a] hearing where 'youth and its attendant characteristics' are considered as sentencing factors . . . ." *Id.* (quoting *Miller*, 132 S. Ct at 2460). However, the Court stated that "*Miller* did not impose a formal fact finding requirement . . . ." *Montgomery*, 136 S. Ct. at 735.

In the briefing that is currently before the Court, Respondents argue that *Montgomery* may have created a new claim and, therefore, to the extent that Petitioner relies on *Montgomery*, that aspect of his claim may have to be exhausted separately from his *Miller* claim. (Doc. 67 at 3.) The assigned magistrate judge considered the exhaustion issue in its prior report and recommendation. (Doc. 43 at 4-7.) The report and recommendation concluded that Petitioner had exhausted a claim based on *Miller* to the Arizona courts on post-conviction review. (*Id*. at 6.) The report and recommendation also concluded that *Montgomery* clarified *Miller* and did not create a new claim that required exhaustion in state court and, alternatively, even if *Montgomery* did create a new claim, Petitioner had exhausted a *Montgomery* claim. (Doc. 43 at 4-7)

On review of the report and recommendation, the district judge concluded that "[t]he component of a *Mille*r claim that juveniles receive a 'life sentence without the possibility of parole' has been exhausted with the state courts." (Doc. 47 at 9.) However,

1 the district judge disagreed with the report and recommendation's conclusions regarding *Montgomery*. (Doc. 47 at 2-9.) Both parties moved for reconsideration on one or both of these issues. (Docs. 48, 49.) In its ruling on the motions for reconsideration, the district judge stated that, as discussed in its prior orders, "it is undisputed that Petitioner exhausted a *Miller* claim in the state courts." (Doc. 60 at 2 n. 1.) The district court further stated that it would "defer a decision on whether *Montgomery* created a new claim that requires exhaustion in state court until the Court reaches the merits of this case." (*Id.* at 3.) The district court stated that its "decision [was] without prejudice to either party advocating that *Montgomery* created a new claim during the Court's merits decision in this case." (*Id.*)

Based on prior orders in this case, the Court reiterates that Petitioner exhausted a *Miller* claim in the state courts and that Petitioner's claim based on that case is properly before the Court. (*See* Doc. 60 at 2 n.1.) As previously noted, Respondents argue that if a claim based on *Montgomery* exists separately from Petitioner's *Miller* claim, Petitioner may not have exhausted that claim. (Doc. 67 at 3.) Petitioner asserts that his arguments based on *Montgomery* are not separate from his *Miller* claim. (Doc. 68 at 3.) Petitioner further argues that even if he were required to exhaust any arguments based on *Montgomery* as a separate claim, he did so by alerting the Arizona Supreme Court to the *Montgomery* decision during post-conviction proceedings. (*Id.* at 10.)

As discussed below, the Court concludes that Petitioner is not entitled to habeas corpus relief based on *Miller*. Therefore, the Court does not need to resolve whether *Montgomery* exists as a separate claim from *Miller,* or whether Petitioner has properly exhausted such a claim. *See Rojas v. Ryan*, 2018 WL 703629, at *7 n.7 (D. Ariz. Feb. 5, 2018) (resolving a *Miller* claim without determining whether *Montgomery* expanded *Miller* or whether the petitioner was required to separately exhaust a claim that relied on *Montgomery*).

/ / /

/ / /

### III. Petitioner's Claim

In the amended petition, Petitioner argues that his consecutive sentences, which result in an aggregate sentence of 57.5 years to life imprisonment, are the functional equivalent of a sentence of life without parole and, therefore, violate the Eighth Amendment under *Graham* and *Miller*. (Doc. 12 at 2, 11-26.) Petitioner presented this same claim to the state court on post-conviction review. (Doc. 33, Exs. M, P.) The trial court and Arizona Court of Appeals rejected this claim. (Doc. 33, Exs. N, U.) The Arizona Supreme Court denied review. (Doc. 33, Ex. X, BB.)

#### A. Federal Habeas Review of Claims Adjudicated on the Merits

Under § 2254(d), a federal court cannot grant habeas corpus relief unless the petitioner shows: (1) that the state court's decision "was contrary to" federal law as clearly established in the holdings of the Supreme Court at the time of the state court decision, or (2) that it "involved an unreasonable application of" such law, § 2254(d)(1); or (3) that it "was based on an unreasonable determination of the facts" based on the record before the state court. 28 U.S.C. § 2254(d)(2). This standard is "difficult to meet." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). It is a "highly deferential standard for evaluating state court rulings, which demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (citation and internal quotation marks omitted). When evaluating state court decisions on habeas review, federal courts look through summary or unexplained higher state court opinion to the last reasoned decision on the claim.[3] *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

To determine whether a state court ruling was "contrary to" or involved an "unreasonable application" of federal law, courts look exclusively to the holdings of the Supreme Court that existed at the time of the state court's decision. *Greene v. Fisher*, 565 U.S. 34, 38 (2011). A state court's decision is "contrary to" federal law if it applies a

---

[3] The last reasoned decision on Petitioner's claim is the Arizona Court of Appeals' decision because the trial court and the Arizona Supreme Court addressed the issue summarily. (Doc. 33, Exs. N, U, X.)

rule of law "that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Mitchell v. Esparza*, 540 U.S 12, 14 (2003) (citations omitted). A state court decision is an "unreasonable application of" federal law if the court identifies the correct legal rule, but unreasonably applies that rule to the facts of a particular case. *Brown v. Payton*, 544 U.S. 133, 141 (2005). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree on the correctness of the state court's decision.'" *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Federal courts may also grant habeas corpus relief when the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). "Or, to put it conversely, a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004), *abrogated on other grounds*, *Murray v. Schriro*, 745 F.3d 984, 1000 (9th Cir. 2014); *see also Pollard v. Galaza*, 290 F.3d 1030, 1033, 1035 (9th Cir. 2002) (the statutory presumption of correctness applies to findings by both trial courts and appellate courts). Additionally, state court findings of fact are presumed to be correct. 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with "clear and convincing evidence." *Id.* "A state court's factual findings are unreasonable if 'reasonable minds reviewing the record' could not agree with them." *Ayala v. Chappell*, 829 F.3d 1081, 1094 (9th Cir. 2016) (quoting *Brumfield v. Cain*, ___ U.S. ___, 135 S. Ct. 2269, 2277 (2015)).

When a state court decision is deemed to be contrary to, or an unreasonable application of, clearly established federal law or based on an unreasonable determination of the facts, a petitioner is not entitled to habeas corpus relief unless the erroneous state

1 court ruling also resulted in actual prejudice as defined in *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). *See Benn v. Lambert*, 283 F.3d 1040, 1052 n.6 (9th Cir. 2002). "Actual prejudice" means that the constitutional error at issue had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 631.

### B. Petitioner is Not Entitled to Habeas Corpus Relief

Petitioner argues that his consecutive sentences, which result in an aggregate sentence of 57.5 years to life imprisonment, are the functional equivalent of a sentence of life without parole and, therefore, violate the Eighth Amendment under *Miller*. (Doc. 12 at 2, 11-26.) Respondents argue that Petitioner cannot show that the state court's rejection of this claim is contrary to, or an unreasonable application of, clearly established federal law and, therefore, he is not entitled to habeas corpus relief.[4] (Doc. 67 at 8-10.) As set forth below, the Court agrees with Respondents.

"The threshold question under AEDPA is whether [the petitioner] seeks to apply a rule of law that was clearly established" at the time of the state court decision. *Williams v. Taylor*, 529 U.S. 362, 390 (2000). "Clearly established" federal law consists of the holdings, not dicta, of the Supreme Court. *See White v. Woodall*, ___ U.S. ___, 134 S. Ct. 1697, 1702 (2014); *Carey v Musladin*, 549 U.S. 70, 74 (2006). Habeas relief cannot be granted if the Supreme Court has not "broken sufficient legal ground" on a constitutional principle advanced by a petitioner, even if lower federal courts have decided the issue. *Williams*, 529 U.S. at 381. Although only Supreme Court authority is binding, circuit court precedent may be "persuasive" in determining what law is clearly established and whether a state court applied that law unreasonably. *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003), *overruled on other grounds by Lockyer v Andrade*, 538 U.S. 63, 71 (2003).

In *Graham*, the Supreme Court held that the Eighth Amendment prohibits the imposition of life without parole on a juvenile defendant who did not commit a homicide

---

[4] Respondents alternatively argue that Petitioner's sentencing complies with the requirements of *Miller*. (Doc. 67 at 10-11.) The Court does not consider that argument because it is not necessary for the Court's resolution of the amended petition.

- 11 -

crime. *Graham v. Florida*, 560 U.S. 48, 74 (2010). The Court clarified that "[a] State need not guarantee the offender eventual release, but if it imposes a sentence of life it must provide him or her with some realistic opportunity to obtain release before the end of that term." *Id*. at 82. Two years later, in *Miller*, the Supreme Court held that mandatory life without parole for juvenile homicide offenders violates the Eighth Amendment's prohibition on cruel and unusual punishment. *Miller*, 567 U.S. at 479. In *Miller,* the Court did not foreclose a sentencing court's ability to impose life without parole on a juvenile homicide offender, but explained that the sentence must "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at 480. To support this conclusion the Court cited its explanation in *Graham* that a prohibition on life without parole means that a state "must provide 'some meaningful opportunity to obtain release.'" *Id*. at 470 (quoting *Graham*, 560 U.S. at 75).

Petitioner argues that his aggregated sentence violates *Miller*. (Doc. 12.) The Arizona Court of Appeals rejected that claim on post-conviction review. (Doc. 33, Ex. U.) The appellate court concluded that Petitioner was not sentenced to life without parole because both of the "life sentences" provided for the "possibility of parole after twenty-five years." (*Id*. at 3) The appellate court further noted that "although the consecutive nature of Petitioner's three sentences required Plaintiff serve a minimum of 57.5 years, the length of consecutive sentences [did] not make them the functional equivalent of a life sentence without parole." (*Id*.)

The court also concluded that "the consecutive nature of the sentences was not mandatory" because "[u]nder Arizona law, whether to impose consecutive or concurrent sentences rests with the discretion of the trial judge" and the trial court "only determined consecutive sentences to be appropriate after considering testimony provided at a mitigation hearing which addressed, among other matters relevant to sentencing, Amaral's age and 'the characteristics and circumstances attendant to it.'"[5] (*Id*. at 3-4.)

---

[5] Petitioner argues that the trial court thought that consecutive sentences were mandatory. (Doc. 12 at 15.) However, Petitioner further asserts that "neither discretion

- 12 -

1   As discussed below, Petitioner has not shown that the state court's resolution of his
2   *Miller* claim was contrary to, or based on an unreasonable application of, clearly
3   established Supreme Court precedent that existed at the time of the Arizona Court of
4   Appeals' decision. *See* 28 U.S.C. § 2254(d)(1).

5   Petitioner argues that he is entitled to habeas corpus relief based on *Graham* and
6   *Miller* because his aggregate sentence of 57.5 years to life imprisonment is functionally
7   equivalent to life without parole. (Doc. 1 at 7; Doc. 31 at 5.) Petitioner was 16 or 17
8   years old at the time of his sentencing and he argues that his life expectancy is less than
9   seventy-five years due to the toll of prolonged incarceration. (Doc. 12 at 25.) Petitioner
10  will be approximately seventy-four years old when he becomes eligible for parole.

11  Petitioner cites *Moore v. Biter*, 725 F.3d 1184 (9th Cir. 2013), to support his claim
12  that his aggregate sentence violates the Eighth Amendment under *Graham* and *Miller*.
13  (Doc. 12 at 12, 17, 19.) In *Moore*, the Ninth Circuit held that the petitioner's sentence of
14  254 years' imprisonment for non-homicide offenses that he committed as a juvenile
15  violated the Eighth Amendment under *Graham*. *Id*. at 1194. The court concluded that
16  the petitioner's sentence of 254 years' imprisonment was "irreconcilable with *Graham's*
17  mandate that a juvenile *nonhomicide* offender must be provided 'some meaningful
18  opportunity' to reenter society." *Id.* (emphasis added).

19  *Moore* is distinguishable from this case because, unlike Petitioner in this case, the
20  petitioner in *Moore* did not commit a homicide offense. *See Moore*, 725 F.3d at 1186,
21  192-93 (noting that *Graham* distinguished between homicide and nonhomicide crimes).
22  In *Graham,* the Court stated, that "[t]he instant case concerns only those juvenile
23  offenders sentenced to life without parole *solely* for a nonhomicide offense." *Graham*,

24

25  in choosing a sentence nor the label [life without parole] control whether a particular
26  sentence violates *Miller*." (*Id*. at 16.) Petitioner argues that "[i]t is the length of the sentence without a reasonable prospect of release within the offender's lifetime . . ." and
27  whether the trial court made the required considerations when imposing that sentence that are dispositive. (*Id*. at 12.) The Court does not further consider whether the imposition
28  of consecutive sentences was mandatory under Arizona law at the time of Petitioner's sentencing because the resolution of the *Miller* claim in this case does not turn on that issue.

- 13 -

560 U.S. at 63 (emphasis added) (stating that "[j]uvenile offenders who committed both homicide and nonhomicide crimes present a different situation for a sentencing judge than juvenile offenders who committed no homicide.")  The Court further noted that "[t]here is a line 'between homicide and other serious violent offenses against the individual.'"  *Id.* at 69 (quoting *Kennedy v. Louisiana*, 554 U.S. 407, 438 (2008)). Considering the distinction in *Graham* between homicide and non-homicide crimes, *Graham* and *Moore* do not support Petitioner's claim for relief.

Petitioner primarily argues that he is entitled to habeas corpus relief under *Miller,* which held that mandatory life imprisonment without the possibility of parole for juvenile homicide offenders violates the Eighth Amendment's prohibition on cruel and unusual punishment. *Miller*, 567 U.S. at 479.  Petitioner was not sentenced to life without parole. Rather, the trial court sentenced Petitioner to life imprisonment, without the possibility of parole until Petitioner had served twenty-five years, for each of the two first-degree murder convictions, and seven-and-one-half years' imprisonment for the attempted armed robbery conviction.  (Doc. 33, Ex. H at 1-2.)  The trial court ordered the three sentences to run consecutively.  (*Id*.)   The consecutive nature of the three sentences requires Petitioner to serve a minimum of 57.5 years' imprisonment before he will be eligible for parole.  (Doc. 12 at 3.)  Petitioner, however, was not given a mandatory sentence of life imprisonment without the possibility of parole.

*Miller* explicitly applies to mandatory sentences of life without parole on a juvenile defendant. *Miller*, 567 U.S. at 479.  In *Miller*, the Court did not consider the issue of consecutive sentences.  *See id.*  Several years after *Miller* was decided, in *Demirdjian v. Gipson*, 832 F.3d 1060 (9th Cir. 2016), the Ninth Circuit considered the issue of consecutive sentences under *Miller*.  In that case, petitioner argued that his two consecutive sentences of 25 years to life imprisonment violated the Eighth Amendment because he was a juvenile at the time he committed the crimes. *Id*. at 1076.  The petitioner conceded that he did not receive a life-without-parole sentence, but argued that he was entitled to relief under *Miller* because his aggregate sentence was the functional

equivalent of mandatory life without parole. *Id.* at 1076-77. The court concluded that because the petitioner would be "eligible for parole when he was 66 years old, his sentence arguably [did] not 'share [any] characteristics with death sentences' . . . , and thus [did] not necessarily trigger *Miller's* requirements." *Id.* at 1077 (quoting *Miller*, 132 S. Ct. at 2466).

The Ninth Circuit concluded that "[b]ecause fairminded jurists could disagree with [the petitioner] that *Miller's* requirements applied to his sentence," he was not entitled to habeas corpus relief. *Demirdjian,* 832 F.3d at 1077. The court further explained that *Miller* may apply only to life-without-parole sentences:

> *Miller's* prohibition of mandatory life-without-parole sentences for juvenile offenders rested in part on the premise that "a distinctive set of legal rules" applies to a life-without-parole term for juveniles. 132 S. Ct. at 2466. Because such a term is the "ultimate penalty for juveniles . . . akin to the death penalty," *id.* it "demand[s] individualized sentencing," including consideration of the juvenile's age and the circumstances of the crime, *id.* at 2467. *Miller* noted, however, that "no other sentences" "share [these] characteristics with death sentences." *Id.* at 2466 (quoting *Graham v. Florida*, 560 U.S. 48, 69 . . . (2010)). There is a *reasonable argument* that *Miller* thus *applies only to life-without-parole sentences*.

*Id.* at 1076-77 (emphasis added).

As the Ninth Circuit noted in *Demirdjian*, the holding in *Miller* specifically applies to mandatory life-without-parole sentences. *Miller*, 567 U.S. at 479. Petitioner, however, was not sentenced to life without parole. Rather, he was sentenced to consecutive sentences that total 57.5 years to life imprisonment. (Doc. 33, Ex. H at 1-2.) Petitioner argues that his aggregate sentence is functionally equivalent to life imprisonment because he will be approximately 74 years old when he is eligible for parole and his life expectancy is less than 76 years. (Doc. 12 at 25.) Therefore, Petitioner argues his aggregate sentence violates the Eighth Amendment under *Miller*. (Doc. 12.) However, "[t]he rule upon which [Petitioner] relies—that the functional equivalent of life without parole is unconstitutional—is not the rule established in *Miller* and made retroactive in *Montgomery*." *In re Harrell*, 2016 WL 4708184, at *2 (6th Cir.

Sept. 8, 2016) (denying request to file a second or successive habeas petition arguing that an effective term of life imprisonment without parole on a juvenile defendant was unconstitutional under *Miller*); *see also Starks v. Easterling*, 659 F. App'x. 277, 280-81 (6th Cir. 2016) ("[T]he Supreme Court has not yet explicitly held that the Eighth Amendment extends to juvenile sentences that are the functional equivalent of life . . . ."); *Bell v. Nogan*, 2016 WL 4620369, at *3 (D. N.J. Sept. 6, 2016) (denying petitioner's request for a stay to exhaust a claim that his sentence, which constituted a "de facto sentence of life without parole," violated *Miller* because that claim lacked merit).

Because Petitioner did not receive a sentence of life without parole, *Miller* does not explicitly apply to him. The Supreme Court has not yet specifically ruled on whether the Eighth Amendment extends to juvenile sentences that are the functional equivalent of a sentence of life without the possibility of parole and "lower courts are divided about the scope of *Miller*." *Bell*, 2016 WL 4620369, at *3 (citing *Starks*, 2016 WL 4437588, at *3); *see Moore*, 742 F.3d at 920 (O'Scannlian, dissenting from denial of rehearing *en banc*) (collecting cases) (considering *Graham* and noting that courts are split about whether consecutive, fixed sentences resulting in a sentence that exceeds a defendant's life expectancy are the functional equivalent of a life sentence).

Petitioner cites the Seventh Circuit's decision in *McKinley v. Butler*, 809 F.3d 908 (7th Cir. 2016), and several district court and state court decisions to support his *Miller* claim. (Doc. 12 at 17-19, 22-23.) In *McKinley*, the court remanded to the district court to stay the habeas corpus proceeding pending the filing of a post-conviction petition in state court seeking resentencing based on *Miller* and concerns regarding the imposition of a 100-year sentence on a juvenile. *McKinley,* 809 F.3d at 908. These cases, however, are not binding on this Court. Even if the Court were to conclude that the weight of the authority Petitioner cites favors his interpretation of the scope of *Miller*, there would still be no clearly established Supreme Court precedent addressing the issue of aggregate sentences that is presented in the amended petition. This Court is constrained by the

applicable standard of review, which is based on clearly established Supreme Court precedent. *See* 28 U.S.C. § 2254(d); *White,* 134 S. Ct. at 1702.

Because there is no clearly established Supreme Court precedent holding that an aggregate sentence that is functionally equivalent to life imprisonment without the possibility of parole violates the Eighth Amendment, the Arizona Court of Appeals' decision is not contrary to or based on unreasonable application of clearly established Supreme Court precedent. *See Harrington v Richter*, 562 U.S. 86, 101 (2011) (stating that "[i]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]."); *see also White,* 134 S. Ct. at 1706 ("'[I]f a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'") (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)). Thus, the appellate court reasonably concluded that Petitioner was not entitled to habeas corpus relief under *Miller*. *See Demirdjian,* 832 F.3d at 1076-77; *Bautista v. Ryan*, 2017 WL 8181544, at *4 (D. Ariz. Dec. 7, 2017) (concluding that request to amend the petition to include a claim that petitioner's consecutive sentences violated the Eighth Amendment because they were the functional equivalent of life imprisonment without the possibility of parole would be futile).

## IV. Conclusion

The Court finds that Petitioner is not entitled to habeas corpus relief. Therefore, the Court recommends that the amended petition for writ of habeas corpus be denied.

Accordingly,

**IT IS RECOMMENDED** that the Amended Petition for Writ of Habeas Corpus (Doc. 12) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed in forma pauperis on appeal be **DENIED** because Petitioner has not made a substantial showing of the denial of a constitutional right.

1 | This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72. The parties have fourteen days within which to file a response to the objections. Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).

Dated this 26th day of June, 2018.

_____
Bridget S. Bade
United States Magistrate Judge