**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Travis Wade Amaral, | No. CV-16-00594-PHX-JAT |
| Petitioner, | **ORDER** |
| v. | |
| Charles L Ryan, et al., | |
| Respondents. | |

Pending before the Court is the second Report and Recommendation ("R&R") from the Magistrate Judge recommending that the Petition for Writ of Habeas Corpus in this case be denied. (Doc. 69). Petitioner has filed objections to the R&R (Doc. 77) and Respondents have replied to those objections (Doc. 78). The Court must review the portions of the R&R to which there is an objection de novo. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*).

**Review of State Court Decision**

The Petition in this case was filed under 28 U.S.C. § 2254 because Petitioner is incarcerated based on a state conviction. With respect to any claims that Petitioner exhausted before the state courts, under 28 U.S.C. §§ 2254(d)(1) and (2) this Court must deny the Petition on those claims unless "a state court decision is contrary to, or involved an unreasonable application of, clearly established Federal law"[1] or was based on an

---

[1] Further, in applying "Federal law" the state courts only need to act in accordance with Supreme Court case law. *See Carey v. Musladin,* 549 U.S. 70, 74 (2006).

unreasonable determination of the facts. *See Lockyer v. Andrade*, 538 U.S. 63, 71 (2003).[2]

**Merits of the Petition**[3]

As this Court discussed in prior orders, Petitioner brings this Petition claiming that his sentence violates *Miller v. Alabama*, 567 U.S. 460 (2012). (Doc. 47 at 2; Doc. 60). Having review the R&R, the Court has determined there are three issues remaining in this case: 1) whether Petitioner's sentence is a "functional equivalent" of a life sentence; 2) whether, even if Petitioner received a "functional equivalent life sentence," such a sentence provides a basis for relief; and 3) whether *Miller* applies to non-mandatory life sentences. Specifically, the R&R summarized the claims as: "Petitioner argues that his consecutive sentences, which result in an aggregate sentence of 57.5 years to life imprisonment, are the functional equivalent of a sentence of life without parole and, therefore, violate the Eighth Amendment under *Graham* and *Miller*." (Doc. 69 at 9) (citation omitted).

The R&R concluded that Petitioner exhausted the *Miller* claim before the Arizona Courts. (*Id.*). Neither party objected to this finding and the Court hereby accepts it. The Arizona Courts rejected this claim. (*Id.*) (citing Doc. 33, Exs. N, U.). Thus, because the Arizona Courts rejected this claim, this Court can only grant Petitioner relief if the Arizona Courts' decision was contrary to or an unreasonable application of clearly established federal law. *See Lockyer*, 538 U.S. at 71.

**1. Whether Petitioner's sentence is the functional equivalent to a life sentence.**

As the R&R recounts:

After holding an aggravation/mitigation hearing, on March 5, 1993, the trial

---

[2] Petitioner objects to the R&R's statements regarding when 28 U.S.C. § 2254(d)(2) versus 28 U.S.C. § 2254(e)(1) applies. (Doc. 77 at 2). The Ninth Circuit Court of Appeals has noted that there is confusion as to when one or the other of these sections applies or whether they should be read in conjunction. *Murray v. Schriro*, 745 F.3d 984, 1001 (9th Cir. 2014) ("Since *Kesser*, our panel decisions appear to be in a state of confusion as to whether § 2254(d)(2) or (e)(1), or both, applies to AEDPA review of state-court factual findings."). Like the Court in *Murray*, this Court will, "review [Petitioner's] challenges to state-court findings that are based entirely on the record for 'an unreasonable determination of the facts.' *See* 28 U.S.C. § 2254(d)(2); *Kesser*, 465 F.3d at 358 n. 1. [This Court] do[es] not consider any new evidence as to claims adjudicated on the merits by the state court. *See Pinholster*, 131 S.Ct. at 1401."

[3] This Court previously determined Petitioner did not waive his right to bring a collateral challenge to his sentence. (Doc. 47 at 9-10).

- 2 -

> court sentenced Petitioner to life imprisonment, without the possibility of parole until Petitioner had served twenty-five years, for each of the two first-degree murder convictions, and seven-and-one-half years' imprisonment for the attempted armed robbery conviction. (Doc. 33, Ex. H at 1-2.) The trial court ordered the three sentences to run consecutively. (*Id.*) The consecutive nature of the three sentences requires that Petitioner serve a minimum of 57.5 years' imprisonment. (Doc. 12 at 2.).
>
> …
>
> Petitioner argues that he is entitled to habeas corpus relief based on *Graham* and *Miller* because his aggregate sentence of 57.5 years to life imprisonment is functionally equivalent to life without parole. (Doc. 1 at 7; Doc. 31 at 5.) Petitioner was 16 or 17 years old at the time of his sentencing and he argues that his life expectancy is less than seventy-five years due to the toll of prolonged incarceration. (Doc. 12 at 25.) Petitioner will be approximately seventy-four years old when he becomes eligible for parole.

(Doc. 69 at 2, 13).

The parties have not cited, and the Court has not located, a case that draws a line which says that a number of years in prison, or an age at the time of parole eligibility, converts a sentence of a particular length to a "functional equivalent" life sentence. As an example, the Ninth Circuit Court of Appeals has held that a 254-year sentence violated *Graham's* requirement that a juvenile (nonhomicide) offender be given some opportunity to reenter society. (Doc. 69 at 13). Obviously, however, 57.5 years is substantially less than 254 years when considering human life expectancy.

Assuming for purposes of this section that a functional equivalent life sentence is subject to *Miller*, the Court finds Petitioner in this case did not receive the functional equivalent of a life sentence. Petitioner will be eligible for parole when he is 74 years old. The Court does not agree with Petitioner that attaining the age of 74 is the equivalent of death. Accordingly, the Arizona Court of Appeals holding that, "… although the consecutive nature of the three sentences requires that Amaral serve a minimum of 57.5 years, the length of the consecutive sentences does not make them the functional equivalent of a life sentence without parole[]" (Doc. 33-4 at 36), was not contrary to nor an unreasonable application of clearly established federal law, nor an unreasonable determination of the facts. (*See* Doc. 69 at 12-13).

Additionally, while the Court notes that Petitioner argues that he has a shorter life expectancy due to his incarceration, Petitioner offers no evidence of his personal life

expectancy; nor does Petitioner offer an alternative life expectancy this Court should adopt. (*See* Doc. 12 at 25). Thus, on this record, Petitioner has not established that he will be deceased well in advance of 74 years of age such. Accordingly, his argument for an unspecified, alternative life expectancy fails.

Based on the foregoing, because Petitioner did not receive a life sentence, by any definition, *Miller* does not apply. Thus, the Petition in this case will be denied for this reason.

**2. Whether functional life equivalent sentences are barred by *Miller***

Alternatively, assuming Petitioner's sentence was the functional equivalent of a life sentence and that the Arizona Courts unreasonably applied clearly established federal law in concluding otherwise, whether a functional equivalent life sentence (rather than an actual life sentence) is subject to *Miller* remains an open question. Specifically, the Ninth Circuit Court of Appeals has held that:

> *Miller*'s prohibition of mandatory life-without-parole sentences for juvenile offenders rested in part on the premise that "a distinctive set of legal rules" applies to a life-without-parole term for juveniles. 132 S. Ct. at 2466. Because such a term is the "ultimate penalty for juveniles . . . akin to the death penalty," *id.* it "demand[s] individualized sentencing," including consideration of the juvenile's age and the circumstances of the crime, *id.* at 2467. *Miller* noted, however, that "no other sentences" "share [these] characteristics with death sentences." *Id.* at 2466 (quoting *Graham v. Florida*, 560 U.S. 48, 69 . . . (2010)). There is a reasonable argument that *Miller* thus applies only to life-without-parole sentences.

*Demirdjian v. Gipson*, 832 F.3d 1060, 1076-77 (9th Cir. 2016).

In Petitioner's case, the Arizona Court of Appeals held that Petitioner did not receive a life without the possibility of parole sentence. (Doc. 33-4 at 36) ("Amaral was not sentenced to life without parole; both life sentences provided for the possibility of parole after twenty-five years."). For Petitioner to prevail in this case, this Court would have to find that the Arizona Court of Appeals determination that *Miller* did not apply to cases where the sentence was allegedly the functional equivalent of life without the possibility of parole, but not an express life without the possibility of parole sentence, was contrary to or an unreasonable application of federal law. Given that the Ninth Circuit

Court of Appeals has already held that this issue in an open question, (*see Demirdjian*, 832 F.3d at 1076-77),[4] this Court cannot conclude that the Arizona Court of Appeals determination was contrary to or an unreasonable application of clearly established federal law. (*See* Doc. 69 at 13).[5] As a result, the Court will deny the Petition in this case on this alternative basis.

### 3. Whether *Miller* applies to non-mandatory sentences.

As a second alternative, the Court will consider whether *Miller* applies to non-mandatory sentences. Petitioner objects to the R&R's conclusion that *Miller* does not apply to non-mandatory sentences. (Doc. 77 at 5 ("The R&R misidentified the clearly established law and focused solely on whether the sentence was 'mandatory' and 'LWOP in name and in fact.'... [Petitioner] objects to this misidentification….")).[6]

The R&R correctly summarized the state of the law as follows:

> In *Miller*, the Supreme Court held that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Miller*, 567 U.S. at 479. In *Miller*, the Court did not prohibit the imposition of life without parole, but required that when imposing such a sentence the court must consider the defendant's age and age-related characteristics. *Id*. at 479-80. In *Montgomery*, the Court held that *Miller* applies retroactively to cases on collateral review. *Montgomery*, 136 S. Ct. 718. In determining whether *Miller* announced a new substantive rule that should apply retroactively under *Teague v. Lane*, 489 U.S. 288 (1989), the Court in *Montgomery* referred to language from its decision in *Miller*

---

[4] Petitioner argues that *Demirdjian* was wrongly decided. (Doc. 77 at 7 n.7). Obviously, this Court cannot overrule a Ninth Circuit Court of Appeals decision.

[5] Petitioner makes two objections to the R&R's conclusion on this point. First, Petitioner lists several cases wherein, petitioner argues, those courts held that *Miller* applies to *de facto* life without the possibility of parole sentences. (Doc. 77 at 8). Assuming Petitioner is correct regarding the holdings of these cases, it does not impact the fact that no Supreme Court case has made these lower court holdings clearly established federal law as determined by the United States Supreme Court. Thus, this objection is overruled. Second, Petitioner argues that the Ninth Circuit Court of Appeals has held that his theory of relief is viable. (Doc. 77 at 8). However, the Ninth Circuit Court of Appeals case on which he relies, *Moore v. Bitner*, 725 F.3d 1184 (9th Cir. 2013), was not deciding a *Miller* claim. Instead it was deciding a *Graham*, nonhomicide claim. Because *Demirdjian* was specifically deciding a *Miller* claim, this Court will rely on the holding of *Demirdjian*. Therefore, this objection is also overruled.

[6] As Petitioner's objection shows, Petitioner believes the R&R addressed both whether his sentence was mandatory and whether his sentence was life without the possibility of parole. In replying to the objection, Respondents did not dispute this characterization of the R&R. (Doc. 78). Accordingly, the Court has addressed whether Petitioner received a "mandatory" sentence de novo in considering Petitioner's objection.

- 5 -

stating that a sentence of life without parole should be reserved for "all but the rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility." *Montgomery*, 136 S. Ct. at 734 (citing *Miller*, 132 S. Ct. at 2469). In *Montgomery*, the Court interchangeably used concepts of "irretrievable depravity," "permanent incorrigibility," and "irreparable corruption," in its discussion of the retroactivity of *Miller. See Montgomery*, 136 S. Ct at 733-34. The Court concluded that *Miller* "did not require trial courts to make a finding of fact regarding a child's incorrigibility." *Id.* at 735.
The Court noted that "[w]hen a new substantive rule of constitutional law is established, [the] Court is careful to limit the scope of any attendant procedural requirement to avoid intruding more than necessary upon the States' sovereign administration of their criminal justice systems." *Id*. The Court explained that "[t]he procedure *Miller* prescribes" is "[a] hearing where 'youth and its attendant characteristics' are considered as sentencing factors . . . ." *Id*. (quoting *Miller*, 132 S. Ct at 2460). However, the Court stated that "*Miller* did not impose a formal fact finding requirement . . . ." *Montgomery*, 136 S. Ct. at 735.

(Doc. 69 at 6-7).

As discussed above, the R&R concluded that Petitioner exhausted a *Miller* claim in the state courts and neither party objected to this conclusion. (Doc. 69 at 8). Finally, the R&R concluded that the state court's decision that Petitioner was not entitled to relief under *Miller* was not contrary to or an unreasonable application of clearly established federal law, or an unreasonable determination of the facts; therefore, Petitioner is not entitled to relief in this case. (Doc. 69 at 13). Petitioner has objected to this conclusion.

The Arizona Court of Appeals held,

"the consecutive nature of the sentences was not mandatory" because "[u]nder Arizona law, whether to impose consecutive or concurrent sentences rests with the discretion of the trial judge" and the trial court "only determined consecutive sentences to be appropriate after considering testimony provided at a mitigation hearing which addressed, among other matters relevant to sentencing, Amaral's age and 'the characteristics and circumstances attendant to it.'"

(Doc. 69 at 12).

This Court agrees with the R&R that that Arizona Court of Appeals conclusion is not contrary to or an unreasonable application of clearly established federal law. (Doc. 69 at 13). Specifically, in Petitioner's case, he did not receive a "mandatory" life without parole sentence. In fact, Petitioner received a 25-year sentence with the possibility of parole thereafter on each of his homicide charges. (Doc. 69 at 2).[7]

---

[7] Petitioner argues that his sentence was mandatory because the trial judge mistakenly said that consecutive sentences were required. (Doc. 77 at 1.) While the trial judge may have

- 6 -

*Miller*, by its express language, applies only to juveniles who received mandatory life without the possibility of parole sentences. 567 U.S. at 479.[8] However, as this Court discussed at length in its prior orders, there appears to be a lingering question among courts as to whether *Miller* is actually limited to its express language. (Docs. 47 and 60). Specifically, in *Montgomery* and *Tatum* the Supreme Court made statements that hint at *Miller* applying to many more sentencing schemes. (Doc. 69 at 6-7). And Petitioner has cited a number of courts that have held that *Miller* applies to juveniles in discretionary sentencing schemes. (Doc. 77 at 4-6).

However, as Respondents point out in the response (Doc. 78 at 1-4) the scope of *Miller* remains an unsettled question. Thus, the decision of the Arizona Courts in this regard cannot be contrary to or an unreasonable application of clearly established federal law. Accordingly, habeas relief will be denied on this second alternative basis.

**Certificate of Appealability**

The R&R recommends that this Court deny a certificate of appealability because Petitioner has not made a substantial showing of the denial of a constitutional right. (Doc. 69 at 17). Petitioner objects to this recommendation. (Doc.77 at 9-10). Respondents addressed this issue in their reply to the objections. (Doc. 78 at 5).

The Court agrees with the R&R. Jurists of reason would not find this Court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).[9] Petitioner has not made a substantial showing of the denial of a

---

made a mistake under Arizona law (or may have just misspoke); that is an error of state law that Petitioner should have raised on direct appeal. Errors of state law are not cognizable on habeas. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Alternatively, the Court overrules this objection for the reasons stated in the R&R. (Doc. 69 at 12 n. 5).

[8] *See also Aguilar v Ryan*, CV–14–02513–PHX–DJH–BSB, 2016 WL 8944352, at **7–15 (D. Ariz. Sept. 1, 2016), report and recommendation adopted, CV–14–02513–PHX–DJH, 2017 WL 2119490 (D. Ariz. May 16, 2017), notice of appeal filed (May 16, 2017). Here, the Court notes that the R&R did not reach the issue of whether Petitioner's sentencing before the state court complied with *Miller*. (Doc. 69 at 11 n. 4).

[9] While the Court acknowledges there are open questions as to the breadth of *Miller*, given those open questions, it is not debatable that Petitioner has not shown that the opinion of the Arizona Court of Appeals was not contrary to or an unreasonable application of clearly established federal law.

constitutional right. *See* 28 U.S.C. § 2253(c)(2). Thus, a certificate of appealability will be denied.

**Conclusion**

**IT IS ORDERED** that the R&R (Doc. 69) is accepted and adopted, the objections are overruled (Doc. 77) and the Clerk of the Court shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that the request for a certificate of appealability is denied.

Dated this 20th day of December, 2018.

James A. Teilborg
Senior United States District Judge